Larry PIRMANTGEN, et al., Appellants,

v.

John J. FEMINELLI, Appellee.

No. 13–87–381–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 18, 1988.

 

William J. Kolb, Corpus Christi, for appellants.

Ken Dahlberg, Wood & Burney, Corpus Christi, for appellee.

Before KENNEDY, UTTER and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Rev. John J. Feminelli, a recently ordained Roman Catholic priest, brought the present action against Larry and Donna Pirmantgen, Robert and Joseph Nilles, Ed Dorotik, and Oscar and Rose Caballera for libel and slander, and injunctive relief. Before trial on the merits, the court granted a temporary injunction in favor of Feminelli, from which the Pirmantgens and the Caballeras bring the present appeal. We dissolve the injunction.

This action arises from the publication and dissemination by the above defendants of a letter written by Mrs. Kelly, a member of appellee's congregation, which details certain behavior on the part of appellee toward Kelly's son suggestive of pedophilia. The letter was at first revealed only to church officials, who conducted a secret examination of appellee, then a deacon, to determine his fitness for the priesthood. The officials later allowed his ordination and refused further comment on the matter. Since that time, however, the letter or its contents have been revealed to the defendants and others within the appellee's congregation and the local Catholic church and a tape recording of it has been made.

The trial court granted a temporary injunction ordering the defendants:

to desist and refrain from displaying copies or playing the tape recordings of the letter of Gregoria Kelly to Father Rev. Thomas Feeney dated April 15, 1987, to persons other than their attorneys, representatives of official investigative agencies, ordained clergy or in the course of legal proceedings herein until judgment in this cause is entered by this Court.

The stated reasons for the injunction were that further publication and dissemination of the letter would:

alter the status quo and tend to make ineffectual a judgment in favor of Plaintiff in that the displaying of the letter will harm his reputation and damage his effectiveness as a priest ... [and] Plaintiff will be without any adequate remedy in law in that once the letter is displayed

or the tapes played, nothing can be done to undo that act.

In their first point of error, appellants complain that the temporary injunction violates U.S. Const. Amends. I and XIV, and Tex.Const. art. I, § 8. We will discuss these alleged violations of the state and federal constitutions separately.

■ However, we initially wish to distinguish the present injunction, which by its language was issued solely to protect appellee from further defamation from other proper restraints on the release of sensitive materials to prevent excessive pre-trial publicity and protect the rights of the parties to a fair trial. *See Houston Chronicle Publishing Co. v. Hardy,* 678 S.W.2d 495, 498 (Tex.App.—Corpus Christi 1984 no writ).

The United States Supreme Court has consistently applied the general rule that an injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 418, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). In *Keefe,* the plaintiff was a real estate broker whom the defendant allegedly defamed by handing out leaflets condemning his practice of "blockbusting," or using white residents' racial fears to convince them to sell their homes and move out of an area with an increasing black population and then selling their homes to blacks in order to perpetuate the fear. As in the present case, the leaflets in *Keefe* tended to attack not only the plaintiff's vocational practices, but his personal ethics as well. Nonetheless, the Court ordered in accordance with the general rule that the injunction be vacated.

■ Appellee contends that since the injunction only restricts the "displaying" of the letter and "playing" of the tape, it leaves open other means of communicating the letter's contents sufficient to protect appellants' First Amendment rights. However, the right to communicate inherently comprehends the right to communicate effectively. The mere existence of an alter-native means of expression cannot by itself justify a restraint on some particular means that the speaker finds more effective. *Reeves v. McConn,* 631 F.2d 377, 382 (5th Cir.1980). Moreover, the injunction's prohibition of the displaying of copies of the letter in effect prevents the appellants from handing out leaflets containing exerpts from the letter, and prior restraints against leafleting or the distribution of pamphlets is particularly suspect. *Lovell v. City of Griffin,* 303 U.S. 444, 451, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938); *Dallas Ass'n of Community Organizations for Reform Now v. Dallas County Hospital District,* 478 F.Supp. 1250, 1255 (N.D.Tex. 1979). We hold that the injunction violates the First Amendment.

In addition, Tex. Const. art. I, § 8 provides that:

Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.

■ Defamation alone is not a sufficient justification for restraining an individual's right to speak freely. *Hajek v. Bill Mowbray Motors, Inc.,* 647 S.W.2d 253, 255 (Tex.1983). There is no power in courts to make one person speak only well of another. The Constitution leaves him free to speak well or ill; and if he wrongs another by abusing this privilege, he is responsible in damages or punishable by the criminal law. *Ex parte Tucker,* 110 Tex. 335, 220 S.W. 75, 76 (1920).

■ The general rule, however, is subject to certain exceptions:

Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal or written threats may assume that character. When they do, they amount to conduct, or threatened conduct, and for that reason may properly be restrained.

*Tucker,* 220 S.W. at 76. Publications which merely cause adverse business or social effects do not rise to the level of

intimidation or coercion necessary to overcome the protection. *Lloyd v. Alaska Worldwide, Inc.*, 550 S.W.2d 343, 346 (Tex. Civ.App.—Dallas 1977, no writ). In *Hajek*, 647 S.W.2d at 255, the Court further narrowed this exception by stating that language which "evoke[s] no threat of danger to anyone ... may not be subject to the prior restraint of a temporary injunction."

■ In the present case, the letter in question, though it certainly may have an adverse professional and social effect on appellee, does not threaten him, nor does it appear to put him in any danger.

Appellee relies upon *Karamchandani v. Ground Technology Inc.*, 678 S.W.2d 580, 582 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd), which appeared to find another exception where the publication involved was made to specific individuals whose names and addresses were revealed to the defendant by virtue of a "special relationship" with the plaintiff. We need not decide whether such a relationship creates an additional exception to the general rule against prior restraint. In the present case, appellants' communications were in no way facilitated by their relationship with the appellee.

Appellee's contention that the injunction is drawn only to prohibit certain methods of publication is also contrary to the state constitutional protection. *Tucker*, 220 S.W. at 76, asserted that a person's "unhindered right to speak ... cannot co-exist with a power to compel his silence or *fashion the form* of his speech." (emphasis added). One form which appellants have chosen to convey their beliefs about appellee is by distributing copies of the original letter and playing the tape of that letter. We hold that the injunction against such publication violates the Texas Constitution. Appellants' first point of error is sustained.

We have considered appellants' remaining point of error, and it is overruled. We DISSOLVE the injunction.